UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES S. HARVARD, | ) | CASE NO. 1:13CV2464 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Kenneth S. McHargh (Doc. No. 19 ["R&R"]) regarding plaintiff James Harvard's request for judicial review following defendant's denial of his claims for a period of disability and for Disability Insurance Benefits (DIB) under Titles II of the Social Security Act. 42 U.S.C. §§ 416(i) & 423. Plaintiff filed objections to the R&R (Doc. No. 22 ["Objections"]), and defendant filed a response (Doc. No. 23 ["Resp."]). Upon a de novo review of the portion of the R&R to which objection has been made, and for the reasons that follow, the Court accepts the recommendation that the decision of the Commissioner be **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff expressly "stipulates to the facts and procedural background as stated in the Magistrate's Report and Recommendation." (Objections at 827.[1]) Defendant takes the position that the R&R "reflects a thorough discussion of the record evidence[.]" (Resp. at 837.)

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

Therefore, the Court need not reiterate the factual and procedural background, and hereby adopts the same as set forth in the R&R.

## II. STANDARD OF REVIEW

This Court's review of the R&R is governed by 28 U.S.C. § 636(b), which requires a de novo review as to those portions of the document to which objection is made. "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). *See also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections").

Judicial review of an administrative decision under the Social Security Act is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42 U.S.C. § 405(g); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.,* 741 F.3d 708, 722 (6th Cir. 2014).

A reviewing court is not permitted to resolve conflicts in evidence or to decide questions of credibility. *DeLong v. Comm'r of Soc. Sec. Admin.,* 748 F.3d 723, 726 (6th Cir. 2014); *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007). Nor need the reviewing court

2

necessarily agree with the Commissioner's determination in order to affirm it. "Even if [the] Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence." *Kyle,* 609 F.3d at 854–55. This is true even if substantial evidence also supports the claimant's position. *See McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006).

Even when there is substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, a court "cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).

### III. DISCUSSION

Plaintiff objects to (1) the R&R's conclusion that the ALJ's analysis regarding Listing 12.04[2] is supported by substantial evidence and did not require testimony from a medical

---

[2] This analysis is performed at step 3 of the 5-step sequential evaluation process used to determine disability. *See* 20 C.F.R. § 404.1520(a).

expert; and (2) the R&R's conclusion that the ALJ had properly assessed the opinions of plaintiff's treating physicians.[3] The Court will discuss each objection.

**A.      Whether Substantial Evidence Supports the Conclusion Regarding Listing 12.04**

Plaintiff asserts that the evidence shows he equals the criteria for Listing 12.04 Affective Disorders, 20 C.F.R. Pt. 404, Subpt. P., App. 1, and objects to the R&R's recommendation to affirm the ALJ's determination that he does not meet the listing.

The mental disorder listings typically contain a paragraph describing the disorder addressed by the listing, a set of medical findings (referred to as "A criteria") that are used to substantiate the existence of the disorder, and a set of impairment-related functional limitations resulting from the disorder (referred to as "B criteria") that would be incompatible with the ability to do gainful work. *Id.*, § 12.00(A). Some listings, such as Listing 12.04, also contain additional functional criteria (referred to as "C criteria"). Plaintiff does not disagree with the R&R's statement that, to meet the listing, he must either satisfy all the A criteria *and* all the B criteria, *or* satisfy all the C criteria.

Plaintiff's specific challenge is to the R&R's conclusion that it was harmless for the ALJ to have not evaluated the A criteria after finding that plaintiff failed to satisfy the B criteria. Plaintiff further challenges the ALJ's failure to consider any medical evidence and, in particular, his failure to utilize a medical expert, in reaching the determination that plaintiff did not satisfy the B criteria. Finally, plaintiff asserts that the ALJ concluded, without any discussion, that he had not satisfied the C criteria, failing to recognize that at least three

---

[3] The opinions of plaintiff's treating physicians were considered by the ALJ between steps 3 and 4, when the ALJ determines a claimant's residual functional capacity.

4

physicians have suggested that plaintiff has a propensity towards decompensation. (Objections at 830.)

       The evidence from the administrative record that plaintiff has marshalled is little more than the same evidence he presented in his brief. He has not pointed out any error in the R&R; he merely disagrees with the ALJ's decision and with the R&R's recommendation to affirm that decision. Moreover, plaintiff offers no support for his arguments by way of citation to case law, statutes or regulations to refute the reasoning of the R&R. In a conclusory fashion, he asserts that "[w]ithout more of an analysis or explanation, and without medical expert testimony, this Court should find the Magistrate's decision with respect to his evaluation of Listing 12.04 not supported by substantial evidence." (Objections at 831.)[4]

       With respect to the four B criteria, the ALJ concluded that plaintiff is mildly restricted in activities of daily living,[5] has moderate difficulties in social functioning,[6] has moderate difficulties with regard to concentration, persistence or pace,[7] and has experienced no

---

[4] The question for this Court, however, is not whether substantial evidence supports the magistrate judge's recommendation. On de novo review, the Court must evaluate whether substantial evidence supported the ALJ's determination.

[5] The ALJ noted that plaintiff had "described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 91.) He then cited to the record to list these various activities: living alone, completing personal hygiene without assistance, cooking simple meals once or twice daily, completing light household chores (laundry, cleaning, ironing), making household repairs, going outside, shopping for food and necessities, engaging in hobbies, driving to the library to check email, attending college (including night classes), and talking with friends and family. (*Id.*)

[6] The ALJ concluded that, although plaintiff testified that he gets nervous around people, he is not socially isolated. He has interpersonal relationships with his sister and with his mother, whom he occasionally visits; he babysits his niece and nephew, and gets together once or twice a month with friends and family. He also "hangs out" with friends and drinks. He regularly goes to the library, to the grocery store, and to church to get food. Although plaintiff reported having trouble with authority figures, the ALJ noted that he had no trouble communicating with anyone during the hearing. (Tr. at 91.)

[7] The ALJ noted that plaintiff admitted he did not need special reminders to care for his personal needs or to take his medication. He pays his bills, counts change, handles a savings account, and uses a checkbook. He needs no reminders to keep appointments and no one to accompany him. Although he claimed to have a short attention span, he testified that he is near completing a college degree, and his sister testified that he has a normal attention span and could complete tasks. Plaintiff told the independent consultative psychologist that he reads philosophy, science and

episodes of decompensation which have been of extended duration. (Doc. No. 14 ["Tr."] at 91-92.) The ALJ's determination is this regard is supported by substantial evidence. Because plaintiff failed to meet the four B criteria, it was not legal error for the ALJ to have not separately examined the A criteria. *See Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 763 (11th Cir. 2014). In effect, the ALJ accepted as true that plaintiff sufficiently met the A criteria, but did not satisfy the listing because he did not also meet the B criteria.[8]

Plaintiff also challenges the ALJ's analysis with respect to the C criteria. If a plaintiff does not establish both the A and the B criteria, he might still be found to meet Listing 12.04 if, as an alternative, he can establish the C criteria, in which case the record would need to contain substantial evidence of the following:

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.    Repeated episodes of decompensation, each of extended duration; or
2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The fourth B criterion is "repeated episodes of decompensation, each of extended duration[.]" Plaintiff inartfully argues that, because the ALJ failed to adequately analyze this

_____

political science books for six hours a day. Finally, the ALJ noted that plaintiff had no difficulty focusing on questions and formulating responses during the hour-long hearing.

[8] The Court notes, however, that it is better practice to set forth a full determination on both the A criteria and the B criteria. In that way, should an ALJ determine that one or the other set of criteria is not met, but a reviewing court disagrees, that court will be able to immediately proceed to examine the other set of criteria without need to remand for consideration by the ALJ.

fourth B criterion by failing to consider medical evidence, it had the cascading effect of invalidating the ALJ's analysis of the C criteria. The Court takes this to mean that plaintiff's view is that, even if he could not satisfy the combined A and B criteria, he could have satisfied C(1) ("repeated episodes of decompensation, each of extended duration").

Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," and may be "demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00C(4). Such episodes "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* The regulations impose durational requirements that necessitate showing "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Plaintiff points to evidence in the record from his treating physician, Dr. Jands, who opined that plaintiff is markedly limited in his ability to deal with work stress. (Objections at 830, citing Tr. at 714.) Plaintiff argues that this opinion is consistent with the opinion of the consultative examiner, Dr. Pickholtz, who stated that plaintiff has marked limitations in his ability to withstand the pressures associated with day-to-day work activities. (*Id.*, citing Tr. at 426.) Further, Dr. Litwin, who examined plaintiff in connection with his vocational program, also noted low tolerance of frustration. (*Id.*, citing Tr. at 400.) Finally, Dr. Jands and Dr. Serna, a treating psychologist, both opined that plaintiff would be absent from a job from two to three

7

times a month. (*Id.*, citing Tr. at 720.) Relying on these four pieces of record evidence, plaintiff argues that "it stands to reason that if subjected to the demands of day to day work activity, work-related pressures, compounded with the social interaction required by most employment, [p]laintiff is prone to decompensation so as to rise to the level of equaling the 'C' criteria." (*Id.* at 830-31.)

The problem with plaintiff's argument is that, even allowing full weight to the opinions of these physicians, the Court cannot conclude the C criteria would be met. This evidence does not establish the durational requirements. In his evaluation of the B criteria, the ALJ correctly noted that "[t]here is no evidence in the record to indicate the claimant has experienced an exacerbation of symptoms or signs that resulted in a significant alteration of medication or a sustained loss of adaptive functioning." (Tr. at 92.)

Plaintiff concedes that the evidence "may not clearly prove that he meets Listing 12.04[]" (Objections at 831); but he claims it was error for the ALJ to make his final determination without first seeking out medical expert testimony. Plaintiff raised this same argument in his opening brief before the magistrate judge. Here, he offers no legal support for his assertion that it was "incumbent upon the ALJ to elicit the assistance of a medical expert to perform an independent analysis of the evidence[.]" (Objections at 831.) Nor does plaintiff refute in any way the well-reasoned section of the R&R dealing with the question of the need for medical expert testimony. (*See* R&R at 813-815.) The R&R correctly notes that, while the judgment of a physician or psychologist is required on the issue of equivalence for purposes of the listings, the signature of a state agency medical consultant on a Disability Determination and Transmittal Form satisfies that requirement. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2,

1996). Beyond that, the decision whether to call for the testimony of an additional medical expert is entrusted to the discretion of the ALJ. *Id.* at *4.

The Court concludes that there is substantial evidence supporting the ALJ's determination that plaintiff does not meet or equal Listing 12.04. The Court overrules plaintiff's objection.

**B.      Failure to Adopt Findings of Treating Physicians**

Plaintiff objects to the R&R's conclusion that any error that may exist with respect to the ALJ's decision not to credit the opinion of plaintiff's treating physicians does not warrant remand since the ALJ articulated various good reasons for the weight he attributed to the opinion. In determining plaintiff's residual functional capacity, which the ALJ must do between Steps 3 and 4 of the 5-step process, the ALJ itemized his reasons for the various weights he assigned to the opinions of plaintiff's physicians. (*See* Tr. at 92-99.)

Plaintiff specifically objects to the ALJ's treatment of the opinion of Dr. Jands, M.D., plaintiff's primary care doctor, that plaintiff is markedly limited in his ability to deal with work stress and is likely to be absent from work more than three times a month due to his impairments or treatment. (Objections at 833, citing Tr. at 714, 720.) The ALJ attributed "little weight" to Dr. Jands's opinion because of "a brief treatment relationship of once every 4-6 months for a total each time of 20-30 minutes" and due to the fact that the severe limitation identified by Dr. Jands "was based on the claimant's statements that diarrhea and frequent bowel movements were a stressor." (Tr. at 99.) The ALJ is required to assign controlling weight to the opinions of treating physicians provided the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in the case record." *Wilson*, 378 F.3d at 544. Because the ALJ had already

found plaintiff's allegations as to the severity of his symptoms not fully credible, he was justified in assigning little weight to the physician's opinion that was based only on plaintiff's own statements to the physician, not on clinical evidence. Plaintiff also challenges the ALJ's rejection of Dr. Jands's opinion regarding plaintiff's depression as outside the physician's medical expertise. Even if this Court were to credit this challenge, it fails to address the fact that the physician's opinion was not based on objective clinical or diagnostic data.

Next, plaintiff objects to the ALJ's treatment of the opinions of Dr. Serna, Ph.D., who treated plaintiff for depression. Dr. Serna conducted two assessments of plaintiff, both on the same day. The ALJ gave "great weight" to the first assessment (i.e., that plaintiff had no more than mild limitation in his ability to understand, remember, and carry out instructions; moderate limitation in interacting with supervisors, public, and coworkers; and moderate limitation in responding to changes in the work setting) because it was "consistent with the treatment records." (Tr. at 99, with record citations.) The ALJ gave "less weight" to the second opinion (i.e., that plaintiff had marked limitation in his ability to work with others, accept instruction, and get along with others; and marked limitation in maintaining social functions), which was "quite different" than the first and "not consistent with the treatment notes for the reasons mentioned above." (*Id.*)

Plaintiff argues that "it is not clear the reasons to which the ALJ is referring." (Objections at 834.) This argument lacks merit and is somewhat disingenuous. Just two pages before his ultimate conclusion regarding Dr. Serna's second assessment, the ALJ noted that Dr. Serna himself had opined that plaintiff was "likely employable." (Tr. at 97-98, citing the record.) The ALJ determined that this statement "shows the treating psychologist [Dr. Serna] does not believe the claimant [is] as functionally limited as the claimant contends." (*Id.*) The ALJ's

reasons were "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Plaintiff's objection with respect to the ALJ's assessment of his treating physicians is overruled.

## IV. CONCLUSION

For the foregoing reasons, the Court overrules plaintiff's objections, accepts the magistrate judge's recommendation to find the Commissioner's decision supported by substantial evidence, and **AFFIRMS** the Commissioner's decision to deny plaintiff's application for a period of disability and for disability insurance benefits under Title II of the Social Security Act.

**IT IS SO ORDERED**.

Dated: February 6, 2015

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**